Argued January 19, affirmed February 28, reconsideration denied
April 6, petition for review denied May 17, 1977

DIANE LEE SHOBE, *Petitioner,*

*v.*

OREGON WOMEN'S CORRECTIONAL CENTER,
*Respondent.*

(PD No. 189-D(2), CA 7133)

560 P2d 676

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

THORNTON, J.

**THORNTON, J.**

This is an appeal from a decision of the disciplinary committee of the Oregon Women's Correctional Center (OWCC). Petitioner was found guilty of a violation of Major Rule 4, assault. The sanction imposed required petitioner to serve 30 days' full room restriction and loss of 90 days' statutory good time. Petitioner contends that because she was in the Oregon State Hospital on an arguably unauthorized and invalid administrative transfer at the time of the assault, the disciplinary committee lacked jurisdiction to impose sanctions. Petitioner also objects to an apparently unrelated administrative assignment to maximum security segregation on an open-ended basis as violative of the Eighth Amendment prohibition against cruel and unusual punishment.

Petitioner argues that because ORS 179.479[1] limits the persons authorized to transfer an inmate to hospitals to executive officers of institutions listed in ORS 179.321[2] and OWCC was not expressly included in ORS 179.321(2) when OWCC was created in 1971, the transfer was unauthorized and OWCC therefore had

---

[1] ORS 179.479 provides:

"(1) The superintendent or other chief executive officer of an institution listed in ORS 179.321 may, when authorized by regulation or direction of the division having jurisdiction over the institution, convey an inmate to a physician, clinic or hospital, including the University of Oregon Health Sciences Center, for medical, surgical or dental treatment when such treatment cannot satisfactorily be provided at the institution. An inmate conveyed for treatment pursuant to this section shall be kept in the custody of the institution from which he is conveyed.

"(2) Each division shall prescribe rules and regulations governing conveyances authorized by this section."

[2] ORS 179.321 provides:

"(1) The Mental Health Division shall operate, control, manage and supervise: Eastern Oregon Hospital and Training Center, F. H. Dammasch State Hospital, Columbia Park Hospital and Training Center, Fairview Hospital and Training Center and Oregon State Hospital.

"(2) The Corrections Division shall operate, control, manage and supervise: Oregon State Correctional Institution and Oregon State Penitentiary."

[ 659 ]

no jurisdiction to impose a sanction for violation of a rule occurring at the hospital.

■ The Corrections Division has legal custody of inmates of OWCC. ORS 137.124(1); ORS 421.610. The Corrections Division is authorized to adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the division. ORS 421.180. The Corrections Division and OWCC have adopted Major Rules of Conduct pursuant to ORS 421.180 and unless the petitioner can establish that she was not in the legal custody of the Corrections Division or OWCC, she is subject to the rules. We perceive no basis for holding that the arguably unauthorized transfer of petitioner from OWCC to the Oregon State Hospital terminates the legal custody of the Corrections Division or OWCC.

"* * * The word 'custody' does not always mean the same thing. An officer or agency may have physical custody separate and apart from, or in combination with, the legal custody of a different officer or agency. The term is elastic and may mean actual imprisonment or other physical detention, or it may refer to mere power, legal or physical, of imprisoning or of taking manual possession. * * *" *Kneefe v. Sullivan,* 2 Or App 152, 155, 465 P2d 741, Sup Ct *review denied* (1970).

■ Prisoners temporarily outside their usual place of confinement for limited purposes are uniformly held to be still in the legal custody of the penal institution where they were previously confined. *See,* 27 Am Jur2d 852, 853, Escape, Prison Breaking, and Rescue § 6 (1966). This rule as it relates to escapes is provided for by statute in Oregon. *See,* ORS 144.500 et seq; ORS 162.135 et seq. *See also, State v. Gilmore,* 236 Or 349, 388 P2d 451 (1964); *State v. Wolfe,* 10 Or App 118, 497 P2d 1222, Sup Ct *review denied* (1972); *Kneefe v. Sullivan, supra.*

We conclude from the above cited authorities that petitioner was in the custody of the Corrections Division during her transfer to, and confinement in, the hospital, and subject to the prescribed sanctions for a

violation of the Major Rules of Conduct. The regularity of the actions of prison administrators in transferring a prisoner from one prison to another does not affect the legality of the original commitment. *People v. Lilyroth,* 173 Cal App2d 94, 342 P2d 525 (1959).

■  The petition for review in this case seeks review of an order finding petitioner guilty of a Major Rule 4 violation and imposing sanctions of 30 days' room restriction and loss of 90 days' good time. Our review is restricted to that order and the proceedings underlying that order. ORS 421.195. The open-ended segregation from which relief is sought is apparently unconnected with the Major Rule 4 violation order and the proceedings underlying that order. Accordingly, we cannot review the administrative segregation of petitioner.

Affirmed.